IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

LOUIS J. DELGIORNO,

    Plaintiff,

v.                                                      CIVIL ACTION NO. 3:12-CV-132
                                                          (JUDGE GROH)

WEST VIRGINIA BOARD OF
MEDICINE,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Pending before this Court is Defendant West Virginia Board of Medicine's Motion to Dismiss [Doc. 15], filed on March 20, 2013. This motion has since been fully briefed and is now ripe for decision. Having reviewed the record and considered the arguments of the parties, this Court concludes that the Defendant's motion must be **GRANTED**.

## BACKGROUND

The West Virginia Board of Medicine ("WVBOM") is the legislatively-created body charged with the responsibility for licensure and professional discipline of physicians within the State of West Virginia. See W. Va. Code §30-3-2. Plaintiff Louis J. DelGiorno was a practicing physician in the State of West Virginia whose license to practice medicine was revoked by the WVBOM on May 14, 2010, as a result of what the WVBOM found to be "an overall pattern of extremely dangerous practices," including the prescribing of controlled substances to patients with evidence of addiction. The Plaintiff did not appeal this decision to a West Virginia circuit court pursuant to W. Va. Code §29A-5-4 (a provision of the West

Virginia Administrative Procedures Act applicable to decisions from the WVBOM, providing that petitions for appeal of decisions by state agencies may be filed within thirty (30) days "in either the circuit court of Kanawha County, West Virginia or in the circuit court of the county in which the petitioner . . . resides or does business.") *See also* W. Va. Code §30-3-14(l).

On January 27, 2012, the Plaintiff filed a complaint against the WVBOM in the United States District Court for the District of Nevada. The District of Nevada dismissed the Plaintiff's complaint by order dated October 4, 2012, finding that the WVBOM lacked sufficient contacts with the State of Nevada to confer jurisdiction there.

The Plaintiff then filed the instant Complaint in this Court on November 13, 2012, alleging the following: (1) violation of the Supremacy Clause of Article VI of the United States Constitution; (2) violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; (3) violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution; (4) violation of the Due Process Clauses of both the Fifth and Fourteenth Amendments to the United States Constitution; (5) violation of "Rule 802 regarding Hearsay Evidence;" (6) violation of "Rules 615 and 702 regarding testimony and sequestration of witnesses," as well as the Confrontation Clause of the Sixth Amendment to the United States Constitution; and (7) violation of "Rules 103 and 104b regarding Rulings on Evidence and Relevance that depends on fact." The Plaintiff prayed for "declaratory relief by order reinstating the unrestricted license to practice medicine in the State of West Virginia without prejudice," as well as "notification to all governing agencies of said reinstatement," and "relief from any fees associated with [the Plaintiff's] administrative hearing by the WVBOM." The Plaintiff seeks compensatory

damages in the amount of three million dollars ($3,000,000), and punitive damages in the amount of six million dollars ($6,000,000).

On March 20, 2013, the WVBOM filed a motion to dismiss [Doc. 15]. This Court issued a **Roseboro** notice to the *pro se* Plaintiff on March 21, 2013, and on April 15, 2013, the Plaintiff filed a response to the WVBOM's motion. On April 18, 2013, the WVBOM filed a reply. This matter is now ripe for adjudication.

## DISCUSSION

### I. Jurisdiction

Pursuant to 28 U.S.C. §1331, the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. According to the Plaintiff, his claim arises under 42 U.S.C. §1983, inasmuch as it involves the deprivation of his civil rights under color of state law.

### II. Applicable Standard

In assessing a Rule 12(b)(6) motion for failure to state a claim, the court must accept the factual allegations contained in the complaint as true. **Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.**, 910 F.2d 139, 143 (4th Cir. 1990). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." **Bell Atl. Corp. v. Twombly**, 127 S. Ct. 1955, 1974 (2007). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" **Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.**, 591 F.3d 250, 256 (4th Cir. 2009) (quoting **Ashcroft v. Iqbal**, 556 U.S. 662, 678 (2009)).

"A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re Mills*, 287 Fed.Appx. 273, 280 (4th Cir. 2008) (quoting FED. R. CIV. P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotations and citations omitted). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 883-884 (2009) (internal quotations and citations omitted).

### III. Analysis

#### a. Failure to Exhaust Administrative Remedies Does Not Bar a §1983 Claim.

As an initial matter, the Court may dispense with the Defendant's argument that the Plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust administrative remedies. It is true that "the general rule . . . is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and . . . such remedy must be exhausted before the courts will take jurisdiction." *See, e.g.*, **Bank of Wheeling v. Morris Plan & Trust Co.**, 183 S.E.2d 692, 694 (W. Va. 1971) (citing **Texas & Pacific Railway Co. v. Abilene Cotton Oil Co.**, 204 U.S. 426 (1907)). However, the United States Supreme Court has also held that "exhaustion is not a requirement to an action under [42 U.S.C. §1983]." **Patsy v. Board of Regents of State of Florida**, 457 U.S. 496, 500-01 (U.S. 1982). *See also* **Talbot v.**

4

*Lucy Corr Nursing Home*, 118 F.3d 215 (4th Cir. 1997) ("Since *Patsy*, the Supreme Court, this court, and other circuit courts of appeals have confirmed that, as a general rule, exhaustion of state administrative remedies is not required prior to bringing suit under §1983."). Therefore, the Defendant's motion to dismiss on this ground must fail.

      **b.**      **The Plaintiff's Complaint is Facially Deficient.**

Despite the fact that the Plaintiff's failure to exhaust administrative remedies does not bar his claim, his Complaint is nevertheless facially deficient pursuant to Federal Rule of Civil Procedure 12(b)(6) inasmuch as it fails to state a claim upon which relief may be granted. The Court will address the Plaintiff's allegations in turn.

      **i.**      **The Supremacy Clause**

The Plaintiff asserts that during the proceedings against him conducted by the WVBOM, a hearing examiner appointed by the WVBOM ruled that the Plaintiff's license should be suspended for a probationary period and that the Plaintiff should surrender his DEA license and not write any more prescriptions. The Plaintiff alleges that "[t]he WVBOM overruled the recommendation of their own Hearing Examiner and voted to permanently revoke the license of [the Plaintiff] on the grounds that according to [f]ederal [l]aw [the Plaintiff] would be able to reapply [sic] for reinstatement of his DEA [l]icense in ten years." According to the Plaintiff, "[t]his is a clear violation of the Supremacy Clause . . . in that they are exceeding their rights under [s]tate [l]aw to usurp the rights of [the Plaintiff] as provided in [f]ederal [l]aw."

The Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that interfere with, or are contrary to, federal law. ***Hillsborough County, Florida v.***

*Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713 (1985) (citing *Gibbons v. Ogden*, 9 Wheat. 1, 211 (U.S. 1824)). However, even assuming that the Plaintiff is correct regarding the WVBOM's rationale for revoking his license, there is nothing unconstitutional about a state administrative tribunal, acting within the scope of its discretion, fashioning a disciplinary action which also contemplates the effect of applicable federal statutes with regard to the person being disciplined. The Plaintiff fails to identify any actual conflict between state and federal law, and for that reason fails to state a claim upon which relief may be granted.

### ii.  Fourteenth Amendment Equal Protection

The Plaintiff asserts that he "filed a complaint with the WVDOM naming 26 area physicians who had treated former patients of his, many of whom were discharged from his practice for overt or suspected drug use." According to the Plaintiff, "since [the Plaintiff] was accused of not properly screening or recognizing patients who were drug abusers, he filed this complaint to ask that all physicians in the area be held to the same standard of care." However, the Plaintiff alleges that no action against these other physicians was taken by the WVBOM. Thus, the Plaintiff argues, "[t]he WVBOM by its actions has demonstrated itself to be prejudicial in its application of its duty to investigate all legitimate complaints and in its singular effort to single out [the Plaintiff] for actions which were well within the accepted community standards . . . [t]his is a clear violation of the Equal Protection Clause of the [Fourteenth] Amendment."

Section 1 of the Fourteenth Amendment provides: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV.

Any law, therefore, that draws a distinction among people is susceptible to an equal protection challenge. While classifications based on race or national origin are subject to strict scrutiny, and classifications based on sex are subject to intermediate scrutiny, other classifications, like age, disability, and, presumably, occupation, are subject only to the rational basis test. Under the rational basis test, a law will be upheld if it is rationally related to a legitimate government purpose. *See, e.g.*, **Lamb v. John Umstead Hosp.**, 19 F. Supp.2d 498, 503 (E.D.N.C. 1998) (citing Erwin Chemerinsky, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES at 527 (1997)).

However, the Plaintiff does not allege that he was discriminated against because of his occupation. In fact, the Plaintiff does not allege that he was discriminated against because of his membership in any class whatsoever. The Plaintiff does not allege that the WVBOM drew any sort of categorical distinction between himself and other physicians. The Plaintiff merely alleges that he was disciplined by the WVBOM, while other physicians whom the Plaintiff alleges were engaging in the same practices for which the Plaintiff had his license revoked were not disciplined. Suffice it to say that such allegations do not amount to an equal protection violation, and the Plaintiff therefore fails to state a claim upon which relief may be granted.

### iii. The Double Jeopardy Clause

The Plaintiff next asserts that his practice was scrutinized by the WVBOM in 2004, as a result of which the Plaintiff was directed to attend further training in the field of pain management. The Plaintiff asserts that the 2010 investigation for which his license was revoked "judges him for actions and decisions made in cases that occurred prior to 2004

[and] appl[ies] standards to those cases which were not required prior to 2004."

The Double Jeopardy Clause, which provides, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb," U.S. Const. Amend. V, prohibits not only successive criminal prosecutions but also successive punishments for the same offense. **United States v. Hatfield**, 108 F.3d 67, 68 (4th Cir. 1997). Hence, if a particular civil disciplinary action constitutes "punishment," then it is subject to the Double Jeopardy Clause to the same extent as a criminal prosecution. If, on the other hand, a civil disciplinary action does not constitute "punishment," then the Double Jeopardy Clause is not implicated. To determine whether a particular civil disciplinary action is civil or criminal, then, courts look to: (1) whether the procedure was designed to be remedial; and (2) whether the remedy provided, even if designated as civil, "is so unreasonable or excessive that it transforms what was clearly intended as a civil remedy into a criminal penalty." **Id.** at 68-69 (citing **United States v. Reed**, 937 F.2d 575, 576 n. 3 (11th Cir. 1991); **United States v. Bizzell**, 921 F.2d 263, 267 (10th Cir. 1990); **One Lot Emerald Cut Stones v. United States**, 409 U.S. 232, 235 (1972); **United States v. Ursery**, 518 U.S. 267 (1996); **United States v. One Assortment of 89 Firearms**, 465 U.S. 354, 362 (1984)).

In the Plaintiff's case, however, it is clear that the outcome of the Plaintiff's 2004 proceedings was not "punishment." Taking the Plaintiff at his word, he asserts that following his 2004 proceedings, he was made by the WVBOM to attend additional training in the field of pain management. This hardly meets the standard of being "so unreasonable or excessive that it transforms what was clearly intended as a civil remedy into a criminal penalty." It follows, then, that without any predicate "punishment" having been

8

administered in 2004, the revocation of the Plaintiff's license in 2010 could not have constituted double jeopardy. Therefore, the Plaintiff has failed to state a claim for which relief may be granted.

### iv. Due Process

The Plaintiff asserts the following with regard to his due process claim: (1) that the hearing examiner appointed by the WVBOM failed to address the Plaintiff's allegations of perjury with regard to the complainant in the underlying administrative case; and (2) that the hearing officer "failed to address [the Plaintiff's] assertion that his actions were never in violation of any article of the Management of Intractable Pain provision [codified at] Article 3A of the West Virginia Medical Practice Act."

The Fifth Amendment provides that no person shall, *inter alia*, be deprived of life, liberty, or property without due process of law. As such, the Fifth Amendment provides protection against actions by the federal government. ***United States v. Al-Hamdi***, 356 F.3d 564, 574 n. 11 (4th Cir. 2004). The Fourteenth Amendment incorporates may of the substantive protections of the Fifth Amendment and makes them applicable to state action. ***Deshaney v. Winnebago County Dep't of Social Services***, 489 U.S. 189, 195-96 (1989). To the extent that the Plaintiff's allegations involve the WVBOM, it is the Fourteenth Amendment, if any, which is applicable to the Plaintiff's case. Moreover, as it is obvious that the Plaintiff's life is not in any way endangered as a result of the revocation of his medical license, the Plaintiff must be alleging that he has been deprived of either a property interest or a liberty interest.

In order to state a claim pursuant to 42 U.S.C. §1983 for a Fourteenth Amendment

deprivation of property without due process, the Plaintiff must show: (1) that he has a constitutionally protected property interest; and (2) that he has been deprived of that interest by state action. See **Echtenkamp v. Loudoun County Public Schools**, 263 F.Supp.2d 1043, 1053 (E.D. Va. 2003) (citing **Stone v. Univ. of Md. Med. Sys. Corp.**, 855 F.2d 167, 172 (4th Cir. 1988); **Board of Regents v. Roth**, 408 U.S. 564, 569-70 (1972)). Once these elements are established, the question turns to what process is due and whether it has been provided. *Id.* (citing **Stone**, *supra*; **Cleveland Bd. of Educ. v. Loudermill**, 470 U.S. 532, 541 (1985)). To have a protected property interest, an individual "must be entitled to a benefit created and defined by a source independent of the Constitution, such as state law." *Id.* (citing **Huang v. Board of Governors**, 902 F.2d 1134, 1141 (4th Cir. 1990); **Roth**, *supra*, at 577). With regard to process due, it is well established that due process requires that "an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Id.* (citing **Loudermill**, 470 U.S. at 542).

Even assuming that under the relevant West Virginia statutes, the Plaintiff's license to practice medicine was a "benefit created by state law," as opposed to a mere privilege,[1] the Plaintiff was provided with a hearing prior to the revocation of his license, which is all that due process requires.

Assuming, alternatively, that the Plaintiff's license to practice medicine was to be construed as a liberty interest, the Plaintiff's claim would still fail. A liberty interest may

---

[1] W. Va. Code §30-3-1 clearly states that "the practice of medicine . . . is a privilege and not a natural right of individuals."

arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," or it may arise from an expectation or interest created by state laws or policies.  **Wilkinson v. Austin**, 545 U.S. 209, 221 (2005) (citations omitted).  In order to determine what process is due before an individual may be deprived of a liberty interest, a court must consider three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  *Id.* at 224-25 (citing **Mathews v. Eldridge**, 424 U.S. 319 (1976)).

Even assuming, *in arguendo*, that the Plaintiff's ability to practice medicine constituted a valid liberty interest, the Plaintiff has not made any allegations with regard to the three due process factors, and certainly has not made any allegations sufficient to overcome the State of West Virginia's strong interest in regulating the practice of medicine within its borders.[2]  For all of the foregoing reasons, the Plaintiff has failed to state a claim upon which relief may be granted with regard to his due process allegations.

   **v.**  **Rules of Evidence**

In Counts V, VI, and VII of his Complaint, the Plaintiff alleges the violation of various evidentiary rules by the WVBOM.  It is unclear whether the Plaintiff alleges that the Federal Rules of Evidence were violated, the West Virginia Rules of Evidence, or some other set

---

[2] *See, e.g.,* ***Phillips v. Virginia Bd. of Med.***, 749 F.Supp. 715, 722-23 (E.D. Va. 1990) ("[i]t is difficult to imagine a state interest more important than the protection of citizens against the harms of unethical or incompetent practitioners of the healing arts.").

11

of evidentiary rules. In any event, violations of evidentiary rules are not stand-alone constitutional deprivations such that they would fall within the ambit of 42 U.S.C. §1983. If anything, such allegations would form components of the Plaintiff's due process claim, which this Court has already determined to be untenable. Such objections presumably could have been preserved and raised on direct appeal to a West Virginia state court at the time of the Plaintiff's hearing, but the Plaintiff did not file any such appeal, and these allegations simply do not rise the level of constitutional deprivations. Therefore, the Plaintiff has failed to state a claim for which relief may be granted.

### vi. The Confrontation Clause

Finally, the Plaintiff alleges a violation of the Confrontation Clause of the Sixth Amendment. The Plaintiff asserts that the WVBOM hired an expert witness to perform a record review of thirty-one (31) of the Plaintiff's patient charts and render an opinion. The Plaintiff alleges that "[t]he expert was given a copy of [an] investigative report which was later shown to have no substantive facts . . . [t]his exposure may have affected the expert's objectivity in his review of the records." According to the Plaintiff, "[t]his in effect violates the Confrontation Clause."

The Sixth Amendment provides that: "[i]n all **criminal prosecutions**, the accused shall enjoy the right . . . to be confronted with witnesses against him." U.S. Const. Amend. VI (emphasis added). Unfortunately for the Plaintiff, his administrative revocation proceeding before the WVBOM was a civil matter, not a criminal one. Therefore, the Confrontation Clause is inapplicable, and the Plaintiff has failed to state a claim upon which relief may be granted.

### c. Defendant's Other Grounds for Dismissal Not Considered

Because the Court finds the Plaintiff's Complaint to be facially insufficient to state a claim upon which relief may be granted, the Court has not considered the Defendant's alternative arguments involving the Eleventh Amendment and *Younger* abstention.[3]

### CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss **[Doc. 15]** is **GRANTED**, and the Plaintiff's Complaint is accordingly **DISMISSED WITH PREJUDICE**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and/or *pro se* parties.

**DATED:** May 15, 2013.

*[signature]*
GINA M. GROH
UNITED STATES DISTRICT JUDGE

---

[3] *See **Younger v. Harris**,* 401 U.S. 37 (1971).